UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TIMOTHY M. GEMELLI                  CIVIL ACTION

VERSUS                                NO. 19-13424

STATE OF LOUISIANA ET AL.          SECTION "H"(2)

## REPORT AND RECOMMENDATION

Plaintiff, Timothy M. Gemelli, is a prisoner currently incarcerated in the Boulder County Jail in Boulder, Colorado. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants State of Louisiana Office of Attorney General Jeff Landry, St. Bernard Parish President Guy S. McInnis, Judge Jeanne Juneau, District Attorney Perry Nicosia, Assistant District Attorneys Mikey Morales and Charles Ward, the St. Bernard Parish Sheriff's Office, Sheriff James Pohlmann, Deputy Michelle Canepa, Clerk of Court Randy Nunez, Melissa M. Evans and Brook Kerrigan.

Plaintiff's complaint, as amended, alleges generally that defendants violated his federal and state constitutional rights when they arrested and incarcerated him pursuant to a sworn affidavit of probable cause that contained material omissions of fact. Record Doc. No. 6 at pp. 8–12. He further alleges that defendants violated his federal and state constitutional rights during his St. Bernard Parish criminal proceedings and throughout his incarceration in the St. Bernard Parish Jail. Id. In addition, plaintiff complains that defendants slandered and made false accusations against him, resulting in loss of his businesses, property and reputation. Id. at p. 9. Gemelli seeks monetary relief. Id. at p. 14.

In response to my order, Record Doc. No. 15, Plaintiff filed a statement of facts in which he further alleges that his Double Jeopardy rights under the Fifth Amendment of the United States Constitution were violated when he was convicted in Colorado based on the same criminal charges on which he previously was acquitted in St. Bernard Parish. Record Doc. No. 17 at p. 1. Broadly construed, plaintiff seeks a court order overturning his Colorado conviction on double jeopardy grounds in addition to monetary damages.

On January 27, 2020, the undersigned Magistrate Judge issued a Report and Recommendation, recommending that the motion to dismiss of defendant State of Louisiana Office of Attorney General Jeff Landry should be granted and that defendant dismissed with prejudice from this matter because that defendant is immune from suit under the Eleventh Amendment of the United States Constitution. Record Doc. No. 24. As of tihs date, that recommendation remains pending.

On February 11, 2020, I conducted a telephone conference in this matter. Participating via telephone were plaintiff, pro se; and James Evans and Mary Ann Hand, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny. During the conference, plaintiff voluntarily dismissed defendants Evans and Kerrigan on the record and under oath. Record Doc. No. 26. The district judge issued an order dismissing defendants Evans and Kerrigan with prejudice from this matter on February 11, 2020. Record Doc. No. 27.

**THE RECORD**

2

Plaintiff testified that he presently is incarcerated in the Boulder County Jail in Boulder, Colorado based on an aggravated incest conviction. He stated that he was arrested in Louisiana on January 11, 2017, based on allegations of multiple acts of aggravated incest of his daughter from 2000 to 2004, when his daughter was between the ages of four and eight and during which the Gemelli family lived in both St. Bernard Parish and Colorado. Plaintiff stated that he was tried in St. Bernard Parish on January 7–14, 2019, and the jury acquitted him of all charges. Plaintiff testified that he lost three businesses and his home during his St. Bernard Parish criminal proceedings.

Gemelli testified that after his acquittal a detective instructed plaintiff's daughter to file the same aggravated incest charges against plaintiff in Colorado. Plaintiff said that he was extradited to Colorado and charged with aggravated incest based on the same incidents, testimony and witness statements as his St. Bernard Parish criminal charges. He stated that he filed a pretrial double jeopardy motion in Colorado based on his acquittal in St. Bernard Parish, but the Colorado appeals court dismissed the motion because there was no final judgment from the Colorado trial court on which to base a decision.

Plaintiff stated that in October 2019, his Colorado attorney advised that he would not adequately be prepared to defend plaintiff by December 9, 2019 – plaintiff's speedy trial date – and further advised that if plaintiff did not waive his speedy trial rights in favor of a May or June 2020 trial date, plaintiff would have to proceed pro se. Plaintiff stated that he opted to proceed pro se with his speedy trial date because he had been incarcerated for three years at that point and did not wish to sit in jail for several additional months. Gemelli testified that

3

his Colorado trial occurred on December 9–17, 2019. He stated that he was not permitted to introduce information or transcripts from his St. Bernard Parish criminal proceedings at his Colorado trial. Plaintiff testified that the Colorado jury found him guilty of aggravated incest on December 17, 2019. Plaintiff's statement of facts alleges that "Colorado has now violated my constitutional rights [against] double jeopardy." Record Doc. No. 7 at p. 1.

Gemelli testified that he filed applications for post-conviction relief after he was convicted in Colorado but took no further action with his double jeopardy motion. He stated that he was assigned an attorney on January 13, 2020, for his sentencing. He said that his sentencing originally was scheduled for March 6, 2020, but his attorney filed a motion to continue that date.

The remainder of plaintiff's claims relate to his criminal proceedings and incarceration in St. Bernard Parish. Plaintiff's amended complaint alleges that St. Bernard Parish Deputy Canepa "lied in her sworn affidavit . . . in order to obtain an arrest warrant" in attesting that plaintiff had a history of domestic violence. Record Doc. No. 6 at p. 9. He further alleges in the amended complaint that Deputy Canepa "left out exculpatory information [from the affidavit] . . . made her own conclusions and added her own verbiage, words and [statements] that were not in the witness statements" and drafted the affidavit "without any investigation or verification." Id. at p. 9. Gemelli alleges in his amended complaint that Deputy Canepa admitted to the above-referenced omissions under oath during Gemelli's pretrial and trial proceedings in St. Bernard Parish. Id.

4

In support of his claims against Deputy Canepa, plaintiff submitted to this court his arrest warrant, the affidavit of probable cause in support of his arrest warrant and excerpted, self-annotated transcripts of Deputy Canepa's testimony from his St. Bernard Parish criminal proceedings. Record Doc. Nos. 32-2; 32-7; 32-8. Deputy Canepa attests in the affidavit that the facts alleged were based on video-recorded witness statements from plaintiff's daughter and Kimberly Gemelli – plaintiff's ex-wife and his daughter's mother. Record Doc. No. 32-7. The affidavit attests that plaintiff's daughter said in her witness statement that plaintiff made skin-to-skin contact with her vagina on multiple occasions while she was in her parents' bed. Id. at p. 1. Deputy Canepa testified at a pretrial hearing that she omitted from the affidavit plaintiff's daughter's witness statement that her father was sleeping during every alleged incident in the parents' bed. Record Doc. No. 32-2 at pp. 29, 32. Deputy Canepa testified at trial that she also omitted from the affidavit Kimberly Gemelli's witness statement that her daughter would sleep on Kimberly Gemelli's chest in an upright position whenever the daughter slept in her parents' bed. Id. at p. 90.

Deputy Canepa further attests in the affidavit that Kimberly Gemelli said in her witness statement that plaintiff had a domestic violence history. Record Doc. No. 32-7 at p. 2. At plaintiff's trial, Deputy Canepa testified that she ran a national database search on plaintiff's criminal history, found no record of domestic violence arrests or accusations, and knowingly and intentionally omitted Gemelli's lack of a documented domestic violence history from the affidavit. Record Doc. No. 32-2 at pp. 93–94.

5

Plaintiff stated that his claims against District Attorney Nicosia are based on this defendant's supervisory authority over Assistant District Attorneys Ward and Morales, who prosecuted plaintiff's St. Bernard Parish criminal case during the pretrial and trial phases.

Plaintiff testified that Assistant District Attorney Ward also made false statements at plaintiff's pretrial bond hearing. Gemelli stated that after his arrest on January 11, 2017, a judge set his bond at $100,000 on or about January 13, 2017. Plaintiff stated that he was financially able to bond out of jail at $100,000. Gemelli testified that prosecutors learned that he intended to bond out of jail at $100,000 by listening to his outgoing telephone calls from prison. Plaintiff stated that prosecutors "put a hold" on him and he was brought before the court on January 18, 2017, for a hearing to increase his bond. Plaintiff stated that during the hearing, Assistant District Attorney Ward requested that the court raise the bond to $400,000, arguing that plaintiff was a flight risk with a history of domestic violence. Plaintiff testified that Assistant District Attorney Ward's statements were unsupported by concrete evidence and were "totally untrue" because plaintiff had never been arrested for domestic violence, was born and raised in Louisiana, and owned three businesses, a house and other property in Louisiana. Plaintiff stated that his attorney attempted to persuade the judge that increasing the bond was premature in light of the lack of evidentiary support for Assistant District Attorney Ward's statements, but the judge ultimately decided to increase the bond to $400,000. Gemelli testified that he was financially unable to bond out of prison at $400,000 and remained incarcerated in the St. Bernard Parish Jail for two years before his trial.

Plaintiff's amended complaint alleges that Assistant District Attorney Morales made unfounded, meritless, degrading and derogatory statements about plaintiff in front of his friends and family during his St. Bernard Parish criminal proceedings. Plaintiff testified that Assistant District Attorney Morales additionally made derogatory statements in front of the jury during his trial and displayed improper trial conduct.

Gemelli testified that his claims against Judge Juneau relate solely to her conduct as the presiding judge during his St. Bernard Parish criminal proceedings. Plaintiff stated that he filed several pretrial motions for preliminary examination, but Judge Juneau continued these motions through September 2018. He stated that his motion for preliminary examination ultimately was taken under advisement by the court, but he never received a hearing. Plaintiff's amended complaint alleges that Judge Juneau "made several snide remarks and comments" in open court throughout his criminal proceedings, displayed bias against plaintiff and permitted prosecutors to engage in unprofessional conduct in front of the jury. Record Doc. No. 6 at p. 12. He further states in his amended complaint that Judge Juneau denied several of his motions, overruled all of his attorney's objections, violated his constitutional rights to a preliminary hearing and bond reduction hearing and failed to enforce her court order for prosecutors to turn over exculpatory cell phone and text message evidence to plaintiff's attorney. Id.

Plaintiff testified that prosecutors failed to comply with Judge Juneau's court order to produce exculpatory cell phone and text message evidence to his attorney. Gemelli testified that he sent his daughter a text message on January 1, 2017, in which he announced

he was cutting his daughter off financially and no longer would be paying her monthly bills. Gemelli stated that on January 9, 2017, his daughter went to the police department to file criminal charges against him for aggravated incest, resulting in his arrest on January 11, 2017. Plaintiff stated that these text messages were exculpatory evidence because they demonstrate his daughter's retaliatory motive in filing criminal charges against him mere days after plaintiff terminated her financial support. Plaintiff testified that the physical cell phone and text messages were not presented to the jury as evidence during his St. Bernard Parish trial, but the timing and content of the text messages were brought to the jury's attention at trial through his daughter's testimony. Gemelli stated that his daughter testified that she filed criminal charges against him only nine days after receiving the financial cut-off text message.

Plaintiff testified that his complaint against Clerk of Court Nunez is that this defendant provided plaintiff with some – but not all – of the transcripts and court minutes from his St. Bernard Parish criminal proceedings.

Plaintiff named Sheriff Pohlmann and the St. Bernard Parish Sheriff's Office as defendants but did not assert allegations against these parties in his written submissions or Spears testimony.

Plaintiff's written submissions assert no claim against St. Bernard Parish President McInnis. Plaintiff testified that McInnis "personally didn't do anything to [plaintiff]" and was named as a defendant only because plaintiff "just wanted to make sure [he] covered everything."

8

Plaintiff testified that he was "not really interested" in asserting claims against court reporters Kerrigan and Evans and agreed to voluntarily dismiss them as defendants in this matter as noted above. Record Doc. Nos. 26, 27.

Gemelli testified that he experienced inhumane conditions while incarcerated in the St. Bernard Parish Jail from January 13, 2017, through January 18, 2019. He stated that the jail conditions were "atrocious" and that he "wouldn't lock a dog up in there." Plaintiff said that he was housed in the prison's medical dormitory, which was designed to accommodate 12 inmates, but in practice would house up to 20 inmates at a time. He stated that if inmates were admitted to the jail with poor health conditions, the healthier inmates would have to go "to the floor."

Plaintiff testified that he did not receive cleaning supplies from prison officials on a regular basis. He stated that inmates were responsible for cleaning their own areas and were supposed to be provided a mop, garbage bags, bucket and broom every morning. He testified that he received cleaning supplies only once or twice a week, which often included dirty mops, buckets and water. Plaintiff said that he would frequently reject cleaning supplies based on their foul smell and contamination. He stated that he made several complaints about the lack of regular and adequate cleaning supplies via the prison's electronic grievance system. He said that the garbage cans were always overflowing and left unattended for two to three days at a time. Plaintiff stated that he had to "beg and plead" for cleaning supplies, especially those required to clean the toilets and showers, and that it was a "nightmare trying to get anything to live in a halfway decent atmosphere."

9

Gemelli stated that the prison's toilets and showers were "out in the open" and that there were no shower curtains. He testified that there was black mold on the prison walls, which grew up to the ceilings. He stated that the prison kitchen was shut down for remodeling at one point during his incarceration due to roach and rat infestation. Plaintiff said that health department officials visited the prison several times while he was incarcerated. He stated that the prison food was served "ice cold" and often had hair in it because kitchen employees were not required to wear hairnets or gloves.

Plaintiff testified that the prison mattresses were thin, uncomfortable for someone of his size, lacked stuffing and had been "ripped to shreds" by previous inmates. He stated that he was forced to sleep on a bunk bed with no ladder. He stated that he witnessed other inmates fall off the top bunks. Plaintiff stated that he was assigned to a bottom bunk, but sometimes would be required to sleep on the top bunk or the floor. He stated that it was "very difficult to get up" to the top bunk and that he had to climb or crawl his way there.

Plaintiff testified that he spent three to four months at a time locked inside the prison dormitory and that when he was allowed outside, it was only for 30 minutes. He stated that he received inadequate exercise and sunlight.

Gemelli testified that although he was provided with medical treatment at the St. Bernard Parish Jail, his medical care was inadeqate based on the process and lengthy time period required to receive treatment. Plaintiff testified that he developed lumps and knots in his back and had a surgical procedure while incarcerated. Plaintiff's verified medical records show that the procedure referenced in plaintiff's Spears testimony was a surgical biopsy to

remove a benign lipoma from his forehead. Plaintiff said that many of the health issues he developed while incarcerated at the St. Bernard Parish Jail subsided after he left the facility.

## ANALYSIS

I.   STANDARDS OF REVIEW

A prisoner's pro se complaint must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579–80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim. 28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of

11

the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326–27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482–83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing and providing an opportunity to amend, a complaint may be dismissed for failure to state a claim or as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176–77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Moore</u>, 976 F.2d at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint, as amended, should be dismissed in part under 28 U.S.C. § 1915(e)(2), 42 U.S.C. § 1997e(c)(1) and/or under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), in light of his testimony and supplemental written submissions and exhibits explaining the factual basis of his claims. **Except for his claim against Deputy Canepa**, which requires further proceedings, plaintiff's amended complaint, as amended by his

testimony at the <u>Spears</u> hearing, fails to state a cognizable Section 1983 claim of violation of constitutional rights, even under the broadest reading.[1]

## III.   PLAINTIFF'S CLAIMS

### (A)   Judicial Immunity

Plaintiff's claims against Judge Juneau are barred by judicial immunity. For more than one hundred years, judges have been held immune from liability for judicial acts done within their jurisdiction. <u>Stump v. Sparkman</u>, 435 U.S. 349, 356 (1978) (citing <u>Bradley v. Fisher</u>, 80 U.S. 335 (1871)); <u>Mays v. Sudderth</u>, 97 F.3d 107, 110 (5th Cir. 1996). "A judge, of whatever status in the judicial hierarchy, is immune from suit for damages resulting from any acts performed in a judicial role." <u>Ammons v. Baldwin</u>, 705 F.2d 1445, 1447 (5th Cir. 1983) (citations omitted); <u>accord Mays</u>, 97 F.3d at 110–11. This judicial immunity applies even if a judge is accused of acting maliciously or corruptly. <u>Stump</u>, 435 U.S. at 356–57; <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967), <u>overruled in part on other grounds by Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), <u>as recognized by Hill v. Shelander</u>, 992 F.2d 714, 716 (7th Cir. 1993); <u>Mays</u>, 97 F.3d at 110–11. Judicial officers are absolutely immune from liability for damages unless they are without jurisdiction. <u>Mays</u>, 97 F.3d at 111; <u>Dayse v. Schuldt</u>, 894 F.2d 170, 172 (5th Cir. 1990); <u>Freeze v. Griffith</u>, 849 F.2d 172, 175 (5th Cir. 1988).

---

[1]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011), <u>cert. denied</u>, 565 U.S. 1263 (2012) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

In the past, judicial officers did not enjoy absolute immunity from suits seeking injunctive relief. Relief of that nature was available under Section 1983 against state court judges acting in their judicial capacity. Pulliam v. Allen, 466 U.S. 522, 541–42 (1984). However, the Federal Courts Improvement Act of 1996 ("FCIA") amended Section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983.

The FCIA therefore statutorily overruled Pulliam's holding regarding the availability of injunctive relief against a state judge in his official capacity. Guerin v. Higgins, 2001 WL 363486, at *1 (2d Cir. 2001); Nollet v. Justices, 83 F. Supp. 2d 204, 210 (D. Mass. 2000); see also Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000) (1996 amendment to Section 1983 limits the relief available against a federal judge to declaratory relief). Thus, neither injunctive relief nor damages are available in this Section 1983 action against this defendant. Tesmer v. Granholm, 114 F. Supp. 2d 603, 618 (E.D. Mich. 2000); Nollet, 83 F. Supp. 2d at 210.

Plaintiff's claims against Judge Juneau concern actions that are exclusively within the scope of the judge's role as a judicial officer and therefore within her jurisdiction. Consequently, the doctrine of absolute judicial immunity bars plaintiff's suit against Judge Juneau. For these reasons, all of plaintiff's claims against Judge Juneau must be dismissed because this defendant is immune from relief. 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

15

(B)     Prosecutorial Immunity

District Attorney Nicosia and Assistant District Attorneys Morales and Ward have been named as defendants in this case based solely upon their supervisory and/or direct actions as prosecutors in connection with plaintiff's St. Bernard Parish criminal proceedings.

Courts employ a "functional" test to determine whether officials are entitled to absolute immunity, in which they look to the "nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 227–29 (1988); accord Hill v. City of Seven Points, 2002 WL 243261, at *10 (5th Cir. 2002); Hulsey v. Owens, 63 F.3d 354, 356 (5th Cir. 1995). It is well established that prosecutors are immune from liability under Section 1983 for actions taken as an advocate in pursuit of a criminal prosecution. Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); Quinn v. Roach, 326 Fed. App'x 280, 292 (5th Cir. 2009); Hill, 2002 WL 243261, at *10. This immunity applies to a prosecutor's actions in "initiating prosecution and carrying [a] criminal case through the judicial process." Id. (quotation omitted); accord Buckley v. Fitzsimmons, 509 U.S. 259, 270, 272 (1993); Quinn, 326 Fed. App'x at 292.

Thus, "[a] prosecutor enjoys absolute immunity from personal liability for damages under section 1983 for actions 'initiating a prosecution and . . . presenting the State's case' and those 'intimately associated with the judicial phase of the criminal process.'" Esteves v. Brock, 106 F.3d 674, 676 (5th Cir. 1997) (quoting Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976)); accord Quinn, 326 Fed. App'x at 292; Hill, 2002 WL 243261, at *10. "A prosecutor's absolute immunity will not be stripped because of action that was in error, was

16

done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Kerr v. Lyford, 171 F.3d 330, 337 & n.10 (5th Cir. 1999), abrogated in part on other grounds by Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003) (quotation omitted); accord Champluvier v. Couch, 309 Fed. App'x 902, 903 (5th Cir. 2009); Hill, 2002 WL 243261, at *10.

In the instant case, the actions of the district attorney and his assistants concerning criminal charges against plaintiff in St. Bernard Parish form the exclusive basis of plaintiff's claims against them. With one exception addressed below, their actions in initiating and pursuing the prosecution of plaintiff fall well within the ambit of the judicial phase of the criminal process for which prosecutors are immune from damages liability.

Broadly construed, plaintiff claims that District Attorney Nicosia and Assistant District Attorneys Ward and Morales did not turn over exculpatory cell phone and text message evidence to his defense attorney in violation of Brady v. Maryland, 373 U.S. 83 (1963). In Brady, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The duty to disclose this kind of evidence exists even though there has been no request by the defendant. Strickler v. Greene, 527 U.S. 263, 280 (1999) (citing United States v. Agurs, 427 U.S. 97, 107 (1976)); Hall v. Thaler, 504 F. App'x 269, 273 (5th Cir. 2012) (citing Kyles v. Whitley, 514 U.S. 419, 433 (1995)). The prosecution's duty to disclose includes both exculpatory and impeachment evidence.

Strickler, 527 U.S. at 280 (citing United States v. Bagley, 473 U.S. 667, 676 (1985)); United States v. Valas, 822 F.3d 228, 236–37 (5th Cir. 2016). Brady claims involve "the discovery, after trial of information which had been known to the prosecution but unknown to the defense." Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994) (quoting Agurs, 427 U.S. at 103) (emphasis added); accord Reed v. Stephens, 739 F.3d 753, 783 (5th Cir. 2014). To prove a Brady violation, Gemelli must establish that the evidence is favorable to the accused as exculpatory or impeachment, that the evidence was suppressed by the State, **and that prejudice resulted from the non-disclosure**. Banks v. Dretke, 540 U.S. 668, 691 (2004) (citing Strickler, 527 U.S. at 281–82); Reed, 739 F.3d at 782.

Plaintiff's written submissions, as confirmed by his Spears testimony, allege that St. Bernard Parish prosecutors failed to disclose exculpatory evidence demonstrating his daughter's retaliatory motive in filing aggravated incest charges against him mere days after he terminated her financial support. However, no prejudice to plaintiff resulted from the non-disclosure becuase, as plaintiff testified at the Spears hearing, the timing and contents of the subject text messages were brought to the jury's attention at his St. Bernard Parish trial through his daughter's testimony. Moreover, **plaintiff was ultimately acquitted of all charges in St. Bernard Parish**.

Therefore, all of plaintiff's claims against District Attorney Nicosia and Assistant District Attorneys Morales and Ward must be dismissed for failure to state a claim under the Brady standard and/or because these defendants are immune from relief. 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

(C)    Clerk of Court Immunity and First Amendment Access to Courts Claim

Plaintiff alleges that Clerk of Court Nunez provided him with some, but not all, of the transcripts and court minutes from his St. Bernard Parish criminal proceedings. Construed broadly, plaintiff's allegations may include that Clerk of Court Nunez deprived plaintiff of his First Amendment right of access to the courts by failing to provide plaintiff with potential exhibits in support of his claims and legal arguments in the present lawsuit, his pretrial motion for double jeopardy in Colorado and his applications for post-conviction relief in Colorado.

"Court clerks 'have absolute immunity . . . for damages arising from acts they are specifically required to do under court order or at a judge's discretion.'" Burnett v. Denman, 368 F. App'x 603, 604 (5th Cir. 2010) (quoting Tarter v. Hury, 646 F.2d 1010, 1013 (5th Cir. 1981)). "Court clerks enjoy qualified immunity for those routine duties not explicitly commanded by either court decree or judicial instruction." Id. "Judicial immunity extends to those officials whose acts are functionally equivalent to that of a judge, and quasi-judicial immunity shields lower officials, such as clerks, who implement judicial orders." Murphy v. Marten, 2006 WL 4043201, at *2 (E.D. La. Aug. 23, 2006) (citing Boston v. Lafayette County, 744 F.Supp. 746, 750 (N.D. Miss. 1990) (citations omitted), aff'd, 933 F.2d 1003 (5th Cir. 1991)) (quotations omitted).

Clerk of Court Nunez "is entitled to absolute immunity as [Gemelli] has not alleged that any of [Nunez's] actions were not taken under court order or at a judge's discretion." Small v. Dallas Cty., Tex., 170 F. App'x 943, 944 (5th Cir. 2006); see also Ricks v. Ellender,

2017 WL 3048648, at *3 (W.D. La. June 12, 2017), report and recommendation adopted, 2017 WL 3044657 (W.D. La. July 18, 2017). Thus, Clerk of Court Nunez is immune from Gemelli's claim for damages.

"To prevail on a denial of access to the courts claim, the prisoner must show that he was prejudiced by the alleged violation." Lockamy v. Dunbar, 399 F. App'x 953, 955 (5th Cir. 2010) (citing Lewis v. Casey, 518 U.S. 343, 351–52 (1996). "In order to demonstrate prejudice, a prisoner must show that his ability to pursue a nonfrivolous legal claim was hindered by the actions of the defendants." Id. (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002)).

As to the present lawsuit, plaintiff has provided this court with the relevant documents and transcripts from his St. Bernard Parish pretrial and trial proceedings to assess the claims and allegations made in this Section 1983 lawsuit. Plaintiff did not identify in his written submissions or Spears testimony the specific transcripts and court minutes Clerk of Court Nunez failed to provide and how the absence of these documents hindered plaintiff's ability to present his claims in this matter.

Plaintiff testified that he filed a pretrial double jeopardy motion in Colorado without issue and that this motion was dismissed by the Colorado appeals court because there was no final judgment from the Colorado trial court to base its decision – not because of the absence of any specific St. Bernard Parish transcripts and court minutes. Gemelli further testified that after he was convicted in Colorado, he filed applications for post-conviction relief without issue and took no further action with his double jeopardy motion. Plaintiff has

not alleged or testified that his lack of specific St. Bernard Parish transcripts and court minutes has hindered his ability to seek post-conviction relief.

Plaintiff has failed to show through his written submission or his <u>Spears</u> testimony how Clerk of Court Nunez hindered his ability to pursue legal claims in this court or the Colorado state courts or that he has been legally prejudiced in any way as described by the Supreme Court in <u>Lewis</u>. Thus, plaintiff has failed to state a cognizable Section 1983 claim against Clerk of Court Nunez for violation of his First Amendment right of access to the courts.

For the foregoing reasons, plaintiff's claims against Clerk of Court Nunez must be dismissed as legally frivolous, for failure to state a claim and/or because they are asserted against a defendant who is immune from such relief. 28 U.S .C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

(D)    Improper Defendant: Sheriff's Office

Gemelli has named the St. Bernard Parish Sheriff's Office as a defendant. The St. Bernard Parish Sheriff's Office is not a "person" for purposes of Section 1983 liability. As a matter of law, a sheriff's office is not a legal entity capable of being sued. <u>Martin v. Davis</u>, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (citing La. Rev. Stat. § 33:361; <u>Causey v. Parish of Tangipahoa</u>, 167 F. Supp. 2d 898, 909 (E.D. La. 2001); <u>Manley v. State</u>, 2001 WL 506175, at *2 (E.D. La. May 11, 2001); <u>Norwood v. City of Hammond</u>, 1999 WL 777713, at *3 (E.D. La. 1999); <u>Boudreaux v. Bourgeois</u>, 1999 WL 804080, at *3 (E.D. La. 1999); <u>Dugas v. City of Breaux Bridge</u>, 757 So. 2d 741, 744 (La. App. 3d Cir. 2000)); <u>accord</u> <u>Hicks</u>

21

v. Page, 2010 WL 2243584 (W.D. La. Feb. 26, 2010); Ruggiero v. Litchfield, 700 F. Supp. 863, 865 (M.D. La. 1988). The State of Louisiana grants no such legal status to any law enforcement office or department. Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't, 350 So. 2d 236 (La. App. 3d Cir.), writ refused, 352 So. 2d 235 (La. 1977).

Under these circumstances, all claims against St. Bernard Parish Sheriff's Office must be dismissed because Gemelli has failed to state a claim upon which relief can be granted as to this defendant. 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

(E)    No Liability of Sheriff

Gemelli has named Sheriff Pohlmann as a defendant in this case, although he neither alleged in his written submissions nor testified at the Spears hearing that Sheriff Pohlmann was personally involved in any of the alleged acts or omissions upon which his claims are based. Thus, he appears to name Sheriff Pohlmann as a defendant based solely upon his official responsibilities over his deputies and/or the parish jail facility.

To hold Sheriff Pohlmann personally liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the Sheriff] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114–15 (5th Cir. 2006). As stated above, plaintiff has failed to establish that Sheriff Pohlmann personally was involved in any acts causing the deprivation of his constitutional rights. Plaintiff further has

failed to establish that a causal connection exists between an act of the sheriff and the alleged constitutional violations.

"There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corr. Corp. of Am. Inc., 364 F. App'x 927, 929 (5th Cir. 2010); Cox, 281 F. App'x at 391; Kohler, 470 F.3d at 1115. Thus, Sheriff Pohlmann cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injuries, if any, were in his employ or under his supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691–95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which Sheriff Pohlmann can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691–95; Thompson, 348 F. App'x at 921–22; Mouille, 977 F.2d at 929. No such unconstitutional custom, usage or policy has been alleged in this case.

In the instant action, plaintiff has failed to establish any of the foregoing essential elements of a supervisory claim under Section 1983 or that Sheriff Pohlmann was personally

involved in any acts causing the deprivation of his constitutional rights. Accordingly, plaintiff's claims against Sheriff Pohlmann must be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

(F)   Inadequate Medical Care

Although plaintiff does not allege that the St. Bernard Parish Jail officials failed to provide him with any particular medical treatment, he alleges generally that he received inadequate medical care based on the process required and length of time it took to receive medical treatment in the jail.

Gemelli was a pretrial detainee at all relevant times about which he complains. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm,

24

during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Shepherd v. Dallas Cnty., 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769–70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under Section 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. 429 U.S. at 104. As discussed above, only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105–06; accord

25

Gregg v. Georgia, 428 U.S. 153, 182–83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The same Eighth Amendment standards detailed above requiring that "the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," id. at 834 (quotation omitted), and that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

In the Section 1983 medical care context, a showing of deliberate indifference to serious medical needs "requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added). "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).

In this case, Gemelli's allegations amount to episodic acts or omissions so that the deliberate indifference standard applies. Even assuming the conditions referenced in plaintiff's Spears testimony – lumps and knots in his back and a benign lipoma on his forehead – presented serious medical needs for constitutional purposes, plaintiff's written

submissions, as explained by his <u>Spears</u> testimony, negate any inference that defendants acted with <u>deliberate indifference</u> to his medical needs. Gemelli testified and his medical records confirm that during his two-year incarceration in the St. Bernard Parish Jail, he received regular medical treatment and prescriptions for his various medical complaints and often was seen by medical professionals multiple times in a single month. Plaintiff's medical records reveal that he received extensive medical attention for ailments both minor – runny nose, sore throat, headaches, spider bite – and significant – a surgical biopsy procedure in February 2018 to excise a benign lipoma from his forehead. Thus, the medical records establish that Gemelli's ailments were appropriately monitored and addressed by medical personnel at the St. Bernard Parish Jail.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. <u>See</u>, <u>e.g.</u>, <u>Raspberry v. Johnson</u>, 281 F.3d 1279 (5th Cir. 2001) (citing <u>Domino</u>, 239 F.3d at 754) (plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own); <u>Greer v. Tran</u>, 124 F. App'x 261, 262 (5th Cir. 2005) (no deliberate indifference to serious medical needs when inmate was tested for diabetes mellitus, which was ruled out, although he ultimately died after falling into a diabetic ketoacidotic coma); <u>Harris v. Donaldson</u>, 71 F.3d 876 (5th Cir. 1995) (no deliberate indifference where prisoner received medical treatment, including blood monitoring, medication and other attention, rendering his Section 1983

medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for his chronic condition).

Certainly, Gemelli did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth Cnty. v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); see also Fourte v. Faulkner Cnty., 746 F.3d 384, 389 (8th Cir. 2014) (high blood pressure readings alone do not indicate serious medical need); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).

Contentions like Gemelli's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section

28

1983 claim); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. No such showing can be made in this case in light of the continuing and successful medical attention Gemelli received during his incarceration at the St. Bernard Parish Jail.

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs. For all of the foregoing reasons, plaintiff's inadequate medical care claims advance a legally frivolous argument and/or fail to state a claim for relief based upon violation of his constitutional rights under Section 1983. 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

(G)     Conditions of Confinement

As discussed above, plaintiff was a pretrial detainee for the entire period of incarceration about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. McCarty v. Zapata Cty., 243 F. App'x 792, 794 (5th Cir. 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare, 74 F.3d

at 636; <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 526 (5th Cir. 1999). As stated above concerning prison medical care,

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or <u>Spears</u> testimony leads to an inference that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id</u>. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in <u>Estelle</u>, 429 U.S. at 104, applies. <u>Olabisiomotosho</u>, 185 F.3d at 526; <u>Tamez v. Manthey</u>, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Gemelli's allegations do not rise to the level of constitutional violations. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk

of serious harm." <u>Farmer</u>, 511 U.S. at 847. To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." <u>Alexander v. Tippah County</u>, 351 F.3d 626, 630 (5th Cir. 2003) (quoting <u>Woods v. Edwards</u>, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. <u>Farmer</u>, 511 U.S. at 847. A prison official cannot be held liable "unless the official <u>knows of and disregards an excessive risk to inmate health or safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>." <u>Id.</u> at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof at a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838–40).

Gemelli's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff – uncomfortable and damaged matresses, periodic

sleeping on the floor, exposed showers and toilets, crowded medical dormitory, poor food quality, lack of bunk bed ladders, infrequent delivery of subpar cleaning supplies, mold on the walls, insect and rodent infestation – while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation.

The Constitution requires that prison officials provide prisoners with only reasonably adequate food, shelter, sanitation and hygiene conditions. Gates v. Cook, 376 F.3d 323, 332, 342 (5th Cir. 2004) (citing Farmer, 511 U.S. at 832). Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held that the Constitution does not mandate prisons with ideally comfortable surroundings or commodious conditions. Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez, 522 F.3d 556, 560 (5th Cir. 2008).

None of Gemelli's allegations about the conditions he experienced establish constitutional violations. Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, restroom four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to

state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In two cases, the Fifth Circuit has held that extreme, <u>virtually permanent</u> conditions of cells that contained excrement and other filth violate the Eighth Amendment. In <u>Harper v. Showers</u>, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in <u>Gates</u>, 376 F.3d at 338, there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found <u>no</u> constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006. The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" <u>Id</u>. at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686–87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he was confined in the cell for only three days. <u>Id</u>. (quoting <u>Wilson</u>, 501 U.S. at 304).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Gemelli do <u>not</u> rise to the level of a constitutional violation. The conditions plaintiff experienced were neither virtually permanent nor an <u>extreme</u> deprivation of the type that might offend the

33

Constitution, and he suffered no serious physical injuries as a result of any allegedly unsanitary conditions. Unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury <u>resulting from</u> the challenged conditions." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir.), <u>cert. denied</u>, 114 S. Ct. 393 (1993) (emphasis added); <u>accord</u> <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 931 (1994).

As to plaintiff's food-related complaints, constitutional standards require only that prison authorities provide an inmate with "sufficient nutritional value to preserve health." <u>Berry v. Brady</u>, 192 F.3d 504, 507 (5th Cir. 1999); <u>Green v. Farrell</u>, 801 F.2d 765, 770 (5th Cir. 1986) (quoting <u>Smith v. Sullivan</u>, 553 F.2d 373, 380 (5th Cir. 1977)). The Constitution does not require that inmates be provided with food at particular temperatures or every culinary amenity which one may find desirable. <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), <u>rec'd. on other grounds sub nom.</u>, <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979); <u>Murray v. Matty</u>, 1985 WL 4948 at *1 (E.D. Pa. 1985); <u>see</u> <u>Hamm v. DeKalb CTY.</u>, 774 F.2d 1567, 1575 (5th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1096 (1986) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); <u>McCoy v. Good</u>, 255 F.Supp.2d 233, 260 (S.D.N.Y. 2003) (denial of warm food is not, by itself, a deprivation of the minimal civilized measure of nutrition so as to support prisoner's Eighth Amendment claim challenging conditions of confinement); <u>Abdul-Akbar v. Dep't of Corrs.</u>, 910 F.Supp. 986, 1006 (D. Del. 1995), <u>aff'd</u> 111 F.3d 125 (3d Cir. 1997) (prison officials did not violate Eighth Amendment where an

inmate alleged that officials served cold meals on unsanitary carts because inmate failed to demonstrate that he was denied an "identifiable human need").

As to plaintiff's complaints that the prison failed to provide him with a suitable mattress and that he occasionally had to sleep on the floor, the Fifth Circuit has not rendered a binding precedential decision concerning the constitutionality of a temporary mattress deprivation, but it addressed such a situation in an unpublished opinion. The district court vacated the jury's verdict, which had found that depriving the plaintiff inmate of a mattress, blanket and toilet paper for two and one-half days violated the Eighth Amendment, and granted judgment as a matter of law to the prison official defendants. The Fifth Circuit affirmed.

> The denial for two and one-half days of a mattress, a blanket, and toilet paper, without more, to an inmate with a cold [who was] confined indoors [in northern Mississippi in November] does not constitute a deprivation of the minimal civilized measures of life's necessities. Although the conditions of [plaintiff's] confinement were uncomfortable and even harsh, the conditions did not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

Phillips v. East, 81 F. App'x 483 (5th Cir. 2003) (citing Turner v. Safley, 482 U.S. 78, 89 (1987); Palmer v. Johnson, 193 F.3d 346, 351–52 (5th Cir. 1999); Talib, 138 F.3d at 215; Novak v. Beto, 453 F.2d 661, 665–66 (5th Cir. 1971)); see also Swift v. Huffman, 80 F. App'x 946 (5th Cir. 2003) (judgment for defendants affirmed when prisoner held for two weeks without bedding or a pillow while misconduct was investigated).

Phillips was in a different procedural posture than the instant case, having proceeded through a trial on the merits, and the Fifth Circuit considered the evidence that had been

introduced at trial concerning the defendants' legitimate penological reasons for depriving the inmate of a mattress. Nevertheless, the appellate court plainly stated that the denial of a mattress for two and one-half days to an inmate who is incarcerated indoors does not violate the Eighth Amendment. Phillips is persuasive authority that the Fifth Circuit would find that Gemelli's temporary lack of a mattress and the prison's provision of battered mattresses was not unconstitutional. Several other circuits have held that deprivation of a mattress for a limited period of time is not per se unconstitutional. See, e.g., Fischer v. Ellegood, 238 F. App'x 428 (11th Cir. 2007) (sleeping on floor for five days does not violate Eighth Amendment); Stephens v. Cottey, 145 F. App'x 179 (7th Cir. 2005) (no Eighth Amendment violation when prisoner slept without a mattress on a metal bedframe for three days and on the floor with no bedframe for five days); Grissom v. Davis, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not deprivation of basic human needs when it did not cause serious harm); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping on concrete slab without mattress or blanket for four days in cell ten feet from exterior door during winter did not deny plaintiff minimal civilized measures of life's necessities); Schroeder v. Kaplan, 1995 WL 398878, at *2 (9th Cir. July 7, 1995) (sleeping on floor without mattress for four weeks does not violate Eighth Amendment).

In a recent split decision, the Fourth Circuit addressed a plaintiff's deprivation of a mattress for four months. The appellate court vacated and remanded to the district court for further proceedings, finding that "[b]y focusing only on the injury Appellant actually

suffered, the [district] court erred by ignoring the <u>risk of harm</u> posed by depriving someone

of a mattress for over four months." <u>Putney v. Likin</u>, 656 F. App'x 632, 637 (4th Cir. 2016).

One judge from the panel of three concurred in part, dissented in part and concurred in the

judgment. In reference to the mattress deprivation issue, he wrote,

> [W]hen children or young adults participate in sleepovers or "crash" at each other's apartments, sleeping on the floor and using only blankets and pillows, they do not deprive themselves of a basic human need. Neither do soldiers on a mission away from their barracks, nor hikers on the trail. In fact, people have slept without mattresses from time immemorial, and do so routinely even today, using only blankets and some form of headrest to serve as a pillow.
>
> Understandably, [plaintiff] has not yet advanced any precedent to support his position that a mattress on its own, qualifies as an indisputable life necessity, but this is a matter that must be explored by the district court on remand. Failing such support for his claim, [plaintiff] would fail, as a matter of law, to satisfy the objective prong of the test that governs such claims–the prong requiring that he show that he suffered an extreme deprivation of a basic human need.

<u>Id.</u> at p. 642 (J. Niemeyer, concurring in part, dissenting in part and concurring in the

judgment).

Neither Gemelli's medical records nor his testimony support the conclusion that he

suffered any serious physical harm as a result of the conditions at the St. Bernard Parish Jail.

In addition, plaintiff has not shown that prison officials were deliberately indifferent to

inmate health or safety in that officials knew of and disregarded an excessive risk to inmate

health or safety. Thus, Gemelli has not alleged serious harm resulting from these problems

to satisfy either the objective or subjective components required to state a claim for

unconstitutional conditions of confinement. Under these circumstances, plaintiff has failed

to state a claim of constitutional magnitude, and his claims concerning the conditions of his confinement must be dismissed for failure to state a claim under Section 1983. 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

(H)     Outdoor Recreation

Gemelli alleges that did not receive sufficient outdoor recreation during his incarceration in the St. Bernard Parish Jail. He complains that he was taken outside for recreation only once every three to four months, for only 30 minutes at a time.

The Fifth Circuit "has held that deprivation of exercise may constitute an <u>impairment of health</u>, which is actionable under the Eighth Amendment, and that the absence of outdoor exercise opportunities may constitute an Eighth Amendment violation." <u>Hewitt v. Henderson</u>, 271 F. App'x 426, 428 (5th Cir. 2008) (citations omitted) (emphasis added). "While neither the Fifth Circuit nor the United States Supreme Court has ever specifically held that inmates enjoy an <u>absolute</u> right to out-of-cell exercise, the Fifth Circuit has repeatedly held that an <u>extended</u> deprivation of exercise opportunities <u>might</u> impinge upon an inmate's Eighth Amendment rights depending upon the particular facts of a given case." <u>Doolittle v. Holmes</u>, 2010 WL 22552, at *4 (M.D. La. Jan. 4, 2010) (citing <u>Hewitt</u>, 271 F. App'x at 428; <u>Green v. Ferrell</u>, 801 F.2d 765 (5th Cir. 1986); <u>McGruder v. Phelps</u>, 609 F.2d 1023 (5th Cir. 1979)) (emphasis in original).

However, it is clear that inmates have no protected liberty interest in specific or any particular amount of outdoor recreational opportunities, and the "[d]eprivation of exercise is not a <u>per se</u> constitutional violation." <u>Lewis v. Smith</u>, 277 F.3d 1373 (5th Cir. 2001) (citing

Stewart v. Winter, 669 F.2d 328, 336 n.19 (5th Cir. 1982); Miller v. Carson, 563 F.2d 741, 751 n.12 (5th Cir. 1977)); accord Sampson v. Corrs. Corp., 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (citing Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991); Lato v. Attorney Gen., 773 F. Supp. 973, 978 (W.D. Tex. 1991) (citing Beck v. Lynaugh, 842 F.2d 757, 762 (5th Cir. 1988)). To succeed on a claim under Section 1983 for lack of exercise, a prisoner must establish "the existence of any health hazard under the specific circumstances involved." Ruiz v. Estelle, 679 F.2d 1115, 1152 (5th Cir.), amended in part, vacated in part on other grounds, 688 F.2d 266 (5th Cir. 1982); accord Delaney v. DeTella, 256 F.3d 679, 684 (7th Cir. 2001); Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986).

Gemelli's testimony and medical records do not support the conclusion that his outdoor exercise only every three to four months caused him to suffer any health impairment that was serious or even related to lack of outdoor recreation. Conditions of confinement may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury resulting from the challenged conditions." Strickler, 989 F.2d at 1381 (emphasis added); accord White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993), cert. denied, 114 S. Ct. 931 (1994). As discussed above in connection with his medical care claim, plaintiff certainly did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. See Hill, 40 F.3d at 1188; Monmouth County, 834 F.2d at 347 (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'"); Dickson, 569 F.2d at 1311 (no serious medical need when plaintiff's high blood pressure presented no "true danger" or "serious threat" to

his health). Gemelli's minor ailments do not rise to the level of health hazard resulting from lack of outdoor exercise necessary to state a constitutional violation under Section 1983. 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

(I)     Double Jeopardy Claim

Gemelli asserts a Fifth Amendment double jeopardy claim based on his Colorado aggravated incest conviction, which allegedly was based on the same incidents and charges on which he previously was acquitted in St. Bernard Parish. He testified at the Spears hearing that he filed applications for post-conviction relief in Colorado, but had yet to refile his double jeopardy motion previously dismissed by the Colorado appeals court for lack of a final judgment on which to base a decision.

Regardless whether he seeks injunctive relief or monetary damages under Section 1983 based on his Colorado criminal proceedings, plaintiff's claims must be dismissed at this time under Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state criminal charges or confinement, which have not been reversed, expunged, invalidated or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that

> relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

<u>Id</u>. at 486–87 (emphasis in original) (footnote omitted). Although the Supreme Court's decision in <u>Heck</u> concerned a civil action for monetary damages, the Fifth Circuit has also applied <u>Heck</u> in cases in which the plaintiff seeks injunctive relief. <u>Clarke v. Stalder</u>, 154 F.3d 186, 189 (5th Cir. 1998) (en banc) (citing <u>Edwards v. Balisok</u>, 520 U.S. 641, (1997)).

Plaintiff's double jeopardy claim in this Section 1983 case necessarily implies the invalidity of his Colorado conviction under <u>Heck</u>. Plaintiff's conviction has <u>not</u> been set aside in any of the ways described in <u>Heck</u>. Thus, any claims of constitutional violation of Section 1983 are premature and must be dismissed, until such time that Gemelli's criminal conviction is set aside. As the Fifth Circuit has noted, the dismissal of this claim is with prejudice to it being asserted again until the <u>Heck</u> conditions are met. <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir. 1996). The proper avenue by which Gemelli must challenge his Colorado conviction and seek to have it overturned is to exhaust his direct appeal and post-conviction rights in Colorado and, only if and after those efforts are unsuccessful, to file a pile a petition for habeas corpus relief in the appropriate federal court.

(J)     <u>Fourth Amendment Claim Against Deputy Canepa</u>

Broadly construed, Gemelli alleges that he was unconstitutionally "seized" under the Fourth Amendment of the United States Constitution when he was arrested and incarcerated

in the St. Bernard Parish Jail for two years based on Deputy Canepa's sworn affidavit of probable cause that contained material omissions of fact. Plaintiff's written submissions, as supported by the excerpted transcripts from his St. Bernard Parish criminal proceedings, allege that Deputy Canepa knowingly omitted from her affidavit exculpatory information concerning plaintiff's alleged acts of aggravated incest in plaintiff and ex-wife Kimberly Gemelli's bed, specifically, his daughter's witness statement that her father was sleeping during every alleged incident in the parents' bed and Kimberly Gemelli's witness statement that her daughter would sleep on Kimberly Gemelli's chest in an upright position whenever the daughter slept in the parents' bed. Record Doc. No. 32-2 at pp. 29, 32, 90. Plaintiff further alleges that Deputy Canepa knowingly failed to qualify Kimberly Gemelli's witness statement that plaintiff had a domestic violence history with Deputy Canepa's investigative knowledge that plaintiff had no documented history of domestic violence. Record Doc. Nos. 32-2 at pp. 93–94; 32-7 at p. 2.

"The Fourth Amendment protects against 'seizures' without 'probable cause.'" Fusilier v. Zaunbrecher, 2020 WL 1490745, at *2 (5th Cir. Mar. 26, 2020) (quoting U.S. Const. Amend. IV). The Fifth Circuit has held that "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example." Castellano v. Fragozo, 352 F.3d 939, 953 (5th Cir. 2003). "[T]he Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." Manuel v. City of Joliet, Ill., 137 S. Ct. 911, 920 (2017).

Recent decisions of the United States Court of Appeals for the Fifth Circuit make clear that a plaintiff adequately pleads a Fourth Amendment claim under Section 1983 when he alleges that he was wrongfully arrested and imprisoned due to knowing or reckless misstatements or omissions of material information in an officer's affidavit in support of probable cause. Fusilier, 2020 WL 1490745, at *2 (5th Cir. Mar. 26, 2020); Winfrey v. Rogers, 901 F.3d 483, 492–93 (5th Cir. 2018). Such a claim is analogous to the tort of malicious prosecution and accrues upon the Section 1983 plaintiff's acquittal of his criminal charges. Id. The Fifth Circuit has held that reversible error occurs when a Fourth Amendment wrongful arrest claim is prematurely dismissed. In Winfrey, the Fifth Circuit recognized the viability of this kind of claim affirmed the district court's refusal to dismiss plaintiff Winfrey's Fourth Amendment wrongful arrest claim on statute of limitations grounds, holding that Winfrey's wrongful arrest claim "accrued when his criminal proceedings ended in his favor." 901 F.3d at 493. Citing Winfrey, the Fifth Circuit in Fusilier reversed the district court's dismissal of plaintiff Fusilier's Fourth Amendment wrongful arrest claim on statute of limitations grounds, holding that a Fourth Amendment claim had been stated and accrued only when Fusilier was acquitted of his criminal charges in state court. 2020 WL 1490745, at *1–2.

Broadly construed, Gemelli claims that he was wrongfully arrested and incarcerated for aggravated incest of his daughter based on the knowing and/or reckless omissions of material, exculpatory information in Deputy Canepa's affidavit in support of probable cause.

Plaintiff's Fourth Amendment claim accrued when he was acquitted of all aggravated incest charges by the St. Bernard Parish jury on or about January 14, 2019.

Qualified immunity shields state officials such as Deputy Canepa from monetary damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what [s]he is doing violates that right.'" Ashcroft, 563 U.S. at 741 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (brackets in original).

Plaintiff's written submissions, as supported by the excerpted transcripts of Deputy Canepa's testimony, adequately state a claim that he has a clearly established constitutional right to be free from police arrest without probable cause and that Deputy Canepa knew that swearing to material omissions in plaintiff's arrest warrant affidavit violates that right. Thus, as a pleading matter, plaintiff states a Fourth Amendment claim under Section 1983 for unconstitutional seizure and incarceration. Plaintiff further pleads facts showing that the doctrine of qualified immunity does not shield Deputy Canepa from money damages. Accordingly, further proceedings are required as to Gemelli's claim against Deputy Canepa.

## **RECOMMENDATION**

44

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint, as amended, be **DISMISSED IN PART WITH PREJUDICE** as legally frivolous, for failure to state a claim and/or for suing defendants immune from monetary relief under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), and/or under Heck v. Humphrey, 512 U.S. 477 (1994) as to defendants St. Bernard Parish President Guy S. McInnis, Judge Jeanne Juneau, District Attorney Perry Nicosia, Assistant District Attorneys Mikey Morales and Charles Ward, the St. Bernard Parish Sheriff's Office, Sheriff James Pohlmann and Clerk of Court Randy Nunez.

**IT IS FURTHER RECOMMENDED** that plaintiff's Fourth Amendment claim against Deputy Michelle Canepa not be dismissed at this time because plaintiff states a valid claim against this defendant under Section 1983 and that further proceedings be conducted as to that claim.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79

F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____29th_____ day of April, 2020.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.